Next case, call for oral argument and enumerate the Marriage of Goines. Counsel, whenever you're ready, you may proceed. Please support. My name is John Schneider, here on behalf of the petitioner. I'm sorry, the respondent in the case, Ms. Goines. This case stems from some undisputed facts about a parcel of land located in Johnson County, Illinois, with over 60 acres, and a mobile home that was acquired by the husband prior to the party's marriage. The disputes and the reason for the appeal arise from the decision of the trial court, specifically paragraph 5 of the court's judgment, that awarded the property solely as non-marital property to the husband. And the trial court, in our opinion, erred by not providing any reimbursement or contribution that was made by the wife  I cited the Crook case, and one of the things that I think I should have done a little better in my initial brief to the court, and I do apologize, in the last part of that decision, there were several things that the court looked at in that opinion, and those facts that are distinguishable from the case we have here. In that case, the non-marital estate provided a home to the parties. It apparently was free of rent or mortgage payments, and it provided buildings for a successful farming operation that was conducted by those parties in some form or fashion during the marriage. That's simply not the case that we have here. The facts of this case is after the parties were married, they, for whatever reason, decided to borrow against the real estate. They had a mortgage and a note in place. And the facts that there was no disagreement on by the parties is that both parties executed the mortgage and also executed the note and were both jointly liable for the indebtedness. During the course of the marriage, the parties testified they had a joint banking account, and they made all of the payments out of the joint banking account during the course of their marriage. They also, at some point in time during the marriage, they had a T-Mobile lease that was in favor of T-Mobile for a cell tower lease, and the payments that came out derived from that lease went directly to the parties as well. The parties during the trial testified that they shared those payments and equally divided those payments. The parties also during trial testified that they made certain improvements to the real estate. That included a new roof to the mobile home, new carpet in the mobile home, new siding, and also a new pavilion. Those improvements, although there was a little bit of a discrepancy between the amounts, the parties testified it was either $23,000 or $24,000. One of the things that I believe the courts look at is was that a significant improvement to that real property and mobile home. If you look at the value, the value that was provided at trial, there was testimony that the mobile home had a value of $91,000. These were $23,000 in improvements. There was also testimony that at the time the parties were married, the value of the real estate and property was $93,600, and in 2010 it had increased after these improvements to $174,600. One of the things that early in my practice, a lawyer cautioned me to go into a courtroom and argue about fairness, so I proceed with caution here today. But what the husband would like to have is he would like to have his case repeated too in this situation. He had this real estate. He entered the marriage. He allowed the wife to go to the bank and sign a note mortgage. He allowed the wife to be on a joint banking account, and both of them worked during the course of the marriage. Both of them contributed to the marital estate. He allowed the wife to be on a cell tower lease and equally divided that money. But then when we proceed to trial and we have the divorce, he wants the court to treat the party as solely non-marital property and him get the benefit of $174,600 asset. I question whether that's fair, and I question whether that's equitable. As far as the clear and convincing evidence in this case, there was no dispute at the amounts that were made towards the mortgage indebtedness. It went from $121,000 down to around approximately $90,000. At the time of the divorce, it was at $84,000. The whole time there was a joint banking account that contributed to those funds to make those payments. One of the cases that was cited was the Snow case. In the Snow case, it was a $25,000 payment, but the court questioned whether those went to principal or interest payments. Clearly, this is different. Clearly, we don't know what the interest payments are in this case. We do know that the principal indebtedness of $121,000 reduced down to $91,000 at one point and $84,000 at another point. It's also clear that both parties contributed toward the improvements of this mobile home. Joint banking account, the funds came out, the funds paid for the improvements, and that was either at $23,000 or $24,000. There was no dispute as to those figures. There was no dispute that the wife had contributed an effort in these improvements. There's nothing in the record that says that this husband at any point in time during the marriage treated this property as non-merit. The facts aren't that we don't have it. The facts that we don't have it, Ann, is that he went down to the bank and said, No, I don't want my wife to sign the note of mortgage indebtedness because I treat this as non-merit property. He didn't go to the T-Mobile people and tell them, I don't want my wife included as a tenant, I'm sorry, a landlord in this tenant-landlord relationship because she's not an owner of the property. He didn't say to anybody that was doing improvements to this home, I want to make it clear and set up a separate account because this is my non-merit property. He treated this property as merit through the entire course of the marriage. I think looking at the factors and looking at the facts, the trial court's decision to not make any reimbursement or benefit to Ms. Goins is an inequitable result, and she should be awarded either reimbursement or the property should be treated as transmutation, and she should be rightfully received her equity in real estate that's now at a value of $174,000 minus the mortgage indebtedness amount. I think I set forth that the amount I believe my client is entitled to, and a fair result in this case would have been $45,300, which was half of the $90,600 equity amount. Thank you for your time today. Thank you, Counsel. Counsel? Honorary Justices, Counsel, may it please the Court, my name is Jeff Valper, and I represent Troy Goins, the husband in this case. This case, Your Honors, is the case of the husband's homestead. Opposing Counsel would have you believe that my client's premarital property had somehow been transmuted over the course of the party's marriage, but the facts of this case simply do not bear that argument out. In 1988, 12 years prior to the party's marriage, my client purchased 60 acres of land in Johnson County, Illinois, from a relative. Shortly thereafter, he placed a double-wide-milled home on that property and moved in. Twelve years later, he married the appellant, Gina. The parties lived in the home. They made some minor improvements and upkeep to the home, such as replacing some siding, replacing some carpet, that sort of thing. They used the home. They lived there. It was where they lived. It was their home. They also built a pavilion. This pavilion was used for parking for cars, as a combination parking garage slash deck, where they would allow that sort of thing. Again, they were using the non-marital property over the course of the marriage. My client, when he purchased this property in 1988, had the deed drawn up solely in his name. At no point from that date to today has that deed been changed. At no point did the parties go to an attorney and ask that a new deed be drafted to add Mrs. Goins to that deed. Yes, they refinanced the property and used the proceeds from that refinancing to pay off some other unsecured marital debts, credit cards, that sort of thing. They also used some of the funds to go towards some of these improvements that were discussed. And the parties paid on that loan with marital funds. That is not disputed. So the wife did pay with marital funds. The parties together had a joint checking account that their incomes would go into the joint checking account. And out of that joint checking account, they would pay the mortgage debt on this property. I want to ask another question. In paragraph 5 of the court's order, he says that there was no evidence presented that the property was purchased in contemplation of the marriage. Do you think that's the right standard? Well, the standard on review, Your Honor, is that the trial court's division of property will not be disturbed unless there's been an abuse of discretion. Now, whether the proper standard is was the property purchased in contemplation of the marriage, I don't think that that is the rock-solid standard. I think that that is a factor that the trial court must consider. Certainly, if instead of the property being purchased in 1988, this property had been purchased in 1998 and the parties were already in a dating relationship, I think that that is a factor that the court definitely could have considered, that the parties would have been in a relationship under that hypothetical circumstance It would have been thinking about marriage and thinking about purchasing property. And yes, if the property was purchased in contemplation of marriage, that should be considered. But one of the briefs indicates that the parties began living together even before marriage. Do you know when they started living together? It was sometime in the late 90s, I believe, Your Honor, if memory serves. But I don't see anything in the order that deals with the issues raised by the briefs, such as the joint checking accounts. I don't see any of the transmutation factors even being considered by the court. They were presented at the trial court level, Your Honor. I understand. I understand they were. But that's why I'm asking. It seems to me that the court ignored those factors and used this intent to maintain as non-marital and no evidence presented that the property was purchased in contemplation of marriage. There are many more factors that the court doesn't seem to mention. Well, and that is correct. I understand the court's reasoning there. However, Your Honor, subsequent to the entry of the final decree, Mrs. Goins filed a motion for reconsideration, which Judge Jackson granted an oral argument on. And Mr. Schneider and I made similar arguments to what we are making to this court now, and Judge Jackson simply denied the request for reconsideration. So the court did consider these factors. He did not include them in his written order, perhaps, but those factors were on the mind of the court because they were presented at oral argument by myself and Mr. Schneider. So they would be in the record? Yes, ma'am, they should be. And, Your Honor, you bring up the point that 750 ILCS 503C controls the transportation. Subsection 1 of that statute requires that in order for property to actually be transmuted from non-marital to marital, it has to lose its identity. That simply did not happen here. This property was deeded to Mr. Goins and solely Mr. Goins. During the party's marriage, the parties purchased that additional 13-acre tract of land that they did put in their joint names. They chose to do that. They did not choose to go back and revise the original deed. An example of this property losing its identity might be an example that the 5th District found in the case of intermarriage of drones where the husband received workers' compensation benefits, took those benefits, which at the time were considered non-marital, I believe this was a 91 case, and put them in the party's joint checking account where either party could have had access to them and used them as he or she saw fit. And in that case, the court found that Mr. Drone had transmuted the property by placing them in the joint checking account. Mr. Goins specifically testified that he did not change the deed because he specifically wanted to ensure that this property stayed within his family. So he had never added Mrs. Goins' name to the deed, and that is in the record. Subsection 2 of the transmutation statute allows for contribution from the non-marital estate to the marital estate and vice versa. Courts have repeatedly stated that the marital estate is properly compensated by the parties having use of the non-marital estate's real property as a residence during the marriage. This has been held in numerous courts of appeals in numerous districts. I don't believe that the issue has specifically been determined by the 5th District. However, the Illinois Court of Appeals in intermarriage of Crook did take this issue. In that case, in Crook, Mrs. Crook, I believe her name was Patricia, at the start of the divorce case had taken $40,000 out of a joint account and paid it on a debt that was for a shed on her non-marital real estate. The trial court had ordered her to reimburse the marital estate for that money. However, that was overturned on appeal, and the Illinois Supreme Court stated that there was no requirement that Mrs. Crook reimburse the marital estate for that $40,000 because the marital estate had already been properly compensated by the use of the non-marital real estate. Similarly here, the Goins, part of the marital estate, was using Mr. Goins' non-marital real estate and mobile home as the marital residence over the course of the marriage. The marital estate has been compensated. Moreover, Gina, the wife, has been further compensated because according to the testimony in her deposition as well as the trial, and I believe even referred to in her brief, she also used the property for recreational use, for hunting and that sort of thing. So, she has gotten the benefit of this non-marital asset over the course of the marriage. I grew up in southern Illinois, and I'm well aware that there are a number of people that will pay good money for property, for the right to hunt on that property. She didn't have to do that. She was able to use Mr. Goins' non-marital 60 acres for hunting or whatever she wanted to do, hiking, four-wheeler riding, that sort of thing. And she did. She enjoyed the use of that. Further, another factor here against transmutation, or at least Ms. Goins believed at the point that the parties separated that the asset had been transmuted, is the fact that once she moved out of the property, she didn't pay another dime towards that property. They were separated for approximately two years before this case became final, and she did not help contribute to that asset. She went off, she purchased her own home, and didn't contribute at all to this 60 acres. Not money-wise, not coming out and owning the yard, nothing. She left, and she was done with that asset, as she should have been, because this is a non-marital asset. The court was well within its authority to determine that the marital estate had already been compensated, that this asset was not marital, and that the asset should be awarded to Mr. Goins. So we would ask that this court confirm the trial court's decision. Thank you, Counsel. Counsel? Yes, Your Honor. I just want to briefly address a few points. The standard that appears to be set forth in paragraph 5 of the trial court's judgment, purchased in contemplation of marriage, I don't see that language and I don't see those factors set forth in 503. In fact, this case isn't about what he contemplated at the time of the marriage, it's what he did after the parties were married. Him simply buying the property 12 or so years prior to him ever even meeting or possibly meeting Ms. Goins, that fact's not in the record. What does remain, and I hate to just keep hammering these points, but he sat down at each and every point that he had an opportunity to say she has nothing to do with this land, she has nothing to do with this mobile home. He accepted her paychecks, he paid out of a joint banking account, he sat down with a note of mortgage and had her sign it, he put her on as an owner of the property on the T-Mobile One lease. All those facts show what he did after the marriage. He treated this real estate as marital property. As far as the record, I'll candidly tell the court that there was a motion to reconsider filed, there was arguments taken up similar to what we're doing here today in front of the trial court. That was not made a part of the record, those arguments. There was no evidence submitted during that motion hearing. There was no testimony given at that motion hearing. I don't believe that would further the interest of this appeal. In the Crook case, another distinguishing fact of the Crook case is undoubtedly there was $40,000 put into a joint banking account and it was reimbursed back to the non-marital estate because there was a building purchased. One of the things I think the court pointed out in that though is there was a shed that was damaged that was on the non-marital estate, the insurance company paid the $40,000, that was for some reason put into a joint banking account and paid back to the non-marital estate. That's simply not the case here. We had these parties treating this property as joint property up to the time of the marriage and then after the marriage. Joint funds, joint checking account, joint obligations. It wasn't until the divorce came along that all of a sudden Mr. Goen says, hey, I don't want this property treated as marital. I want the benefit of now $90,000. As far as the use of the property, the cases that were cited in opposing counsel's brief, I think one case was a business case that talked about the parties reaping a benefit from the business, but there was no contribution made by the spouse. In this case, there was testimony and there was evidence that Ms. Goen's helped do the work on the house. In fact, it said that both parties helped unless they had to hire another person to come in to lay the carpet or put the siding on. I think they testified at trial that they hired a third party to come in and do the roof, but they both contributed to the improvements of this real estate. And my last point is at the trial level and even in the brief, I pointed out that the indebtedness at the time of the party separation was roughly around $91,000. I believe if my memory serves me correct, I made the argument to the court that anything that he had paid after the separation of the parties, if he was putting that money in the bank account and it was $6,000 or so that he paid, she shouldn't get the benefit of that. I made that argument to the court. I think at the trial level I made that argument to the court at the motion to reconsider. Now, I think any court has the discretion of whether they want to include that $6,000 as his separate money. The court's not bound by any division principles. The court can say it's 55% or 45%. In this situation, I think she's entitled to something out of the $90,000 given the fact that for over 10 years during the course of the party's marriage, she contributed to it. Thank you for your time today. Thank you, counsel. We appreciate the brief. In arguments, counsel will take the case under advisement.